IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BERNARD GADSON,

                          Petitioner,                           OPINION AND ORDER

        v.
                                                                24-cv-159-wmc

E. EMMERICH, FCI-Oxford Warden,[1]

                          Respondent.

Representing himself, petitioner Bernard Gadson, a federal inmate, seeks a federal writ of habeas corpus under 28 U.S.C. § 2241, asserting that the Bureau of Prisons ("BOP") violated his due process rights at a disciplinary hearing by preventing him from calling witnesses, presenting evidence, and retrieving legal materials, resulting in him losing good-time credits.[2] (Dkt. ##1 and 2.)  While Gadson concedes that he failed to exhaust his administrative remedies (dkt. #2, at 6), he asserts that these administrative remedies were unavailable because: (1) the BOP Regional Director wrongly rejected his appeals on procedural grounds; and (2) prison officials would not give him the proper form to file his final administrative appeal with the BOP General Counsel.  Not only does respondent argue that petitioner has not shown that his failure to exhaust was excusable but contends that Gadson's claim fails on the

---

[1] The caption has been revised to reflect that E. Emmerich is the warden of FCI Oxford, where petitioner was incarcerated at the time he filed his petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (habeas petition under § 2241 may only be filed "in the district of [petitioner's] confinement").  Although Gadson is now imprisoned at FCI Coleman in Florida, his transfer does not divest this court of jurisdiction, which is determined at the time the petition was filed.  *Ross v. Mebane*, 536 F.2d 1199, 1201 (7th Cir. 1976); *see also Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change.").

[2] Although Gadson also alleged in his petition that BOP issued the disciplinary report in retaliation for his filing a Prison Rape Elimination Act ("PREA") complaint against an officer less the previous day, the court did not allow Gadson to proceed on this claim.  Dkt. #11, at 5, n.2.

merits because he waived his rights to present evidence and call witnesses at his disciplinary hearing.  For the reasons below, the court will deny the petition.

BACKGROUND[3]

### A.  Incident Report No. 3812218

Petitioner Bernard Gadson, who is currently incarcerated at FCI Coleman, is serving an aggregate 110-month sentence followed by a four-year term of supervised release for convictions for attempted bank fraud, aiding and abetting aggravated identity theft, and criminal contempt, with his statutory release date with good time credit projected to be May 9, 2029.  (Dkt. #18-2.)  While Gadson was incarcerated at FCI Ray Brook in New York between July 7, 2022, and September 15, 2023, he was issued Incident Report No. 3812218 on August 15, 2023, for misusing the email system for inmates to communicate with approved contacts.[4]  (Dkt. #18-4, at 3; dkt. #18-6, at 30.)  In accordance with BOP program statement 5270.09, the Unit Discipline Committee ("UDC") determined that there was sufficient evidence to proceed and, because of the severity of the alleged offense, referred the matter to the Disciplinary Hearing Officer ("DHO") for a hearing.  (Dkt. #18-6, at 32.)

On August 17, 2023, Gadson was presented with and signed a "Notice of Discipline Hearing before the DHO," checking the boxes to decline staff representation and his rights to

---

[3] Unless otherwise indicated, the facts in this section are drawn from the petition and the exhibits submitted by the parties.  Because petitioner represents himself, his *pro se* submissions are held to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[4] Specifically, Gadson was accused of circumventing BOP security monitoring by using a third-party texting service to conceal his communications, in violation of the Trust Fund Limited Inmate Computer System (TRULINCS) program statement.  (*See* dkt. #18-5, at 124-25, 129-32; dkt. #18-6, at 19.)

2

call witnesses and present documentary evidence. (Dkt. #18-6, at 34.) On the same day, he also received and signed a copy of "Inmate Rights at Disciplinary Hearing," which expressly advised him of his rights to have a staff representative, call witnesses, and present evidence at the hearing. (*Id.* at 35.)

In his hearing report, the DHO wrote that at the hearing on August 29, 2023, Gadson was reminded of his right to call witnesses or have a staff representative present, but he waived those rights. (Dkt. #18-6, at 40-41.) However, Gadson claims that his hearing was held in the segregated housing unit where he was being housed, and when he asked the DHO to conduct the hearing somewhere more appropriate as he had exhibits and evidence to present, the DHO stated that he did not need to see any other evidence. (Dkt. #2 at 2.) The DHO asked if he wanted to say anything, and Gadson again asked if he could retrieve his exhibits and evidence. (*Id.*) Then the DHO cut him off and told him that he was finding him guilty and sanctioning him. (*Id.*) After reviewing the evidence and Gadson's statements, the DHO convicted Gadson of violating "Code 299 Disruptive conduct (High) Most Like Code 296 Mail Abuse" and imposed a sanction, which included loss of 27 days of good-time credits. (Dkt. #18-6, at 42-43.)

### B. BOP's Administrative Remedy Program

The BOP's Administrative Remedy Program, 28 C.F.R. §§ 542.10-19, outlines the required administrative procedures for inmates to appeal issues relating to their confinement, including a three-tiered appellate review process involving the Warden, the Regional Director, and the General Counsel. 28 C.F.R. § 542.15(a). For DHO appeals, however, an inmate can elect to begin the appeals process by filing a BP-10 form within 20 days of receiving the DHO

report to the Regional Director for the region where he is currently located.  28 C.F.R. § 542.14(a) and (d)(2).  If unsatisfied with the Regional Director's decision, an inmate must then file a BP-11 form to the General Counsel within 30 days of the date the Regional Director signed the response.  28 C.F.R. § 542.15(a).  These time limits may be extended when the inmate demonstrates a valid reason for delay, *id*., such as an extended period during which the inmate was in transit or otherwise physically incapable of preparing a request for appeal.  28 C.F.R. § 542.14(b).

### C. Gadson's Attempted Appeals

According to BOP records, Gadson twice attempted to appeal the decision of the DHO. His first attempted appeal was received by BOP's Northeast Regional Office on September 5, 2023, while he was still incarcerated at FCI Ray Brook.  That appeal was rejected on November 16, 2023, because Gadson included more than one continuation page.  *See* 28 C.F.R. § 542.14(c)(3) ("If more space is needed, the inmate may use up to one letter-size (8½" by 11") continuation page.").  By that time, however, Gadson had been transferred to FCI Oxford, located in the North Central Region, so BOP informed him that his corrected resubmission should be sent to the North Central Regional Office.

On January 8, 2024, Gadson resubmitted his appeal, but he again sent it to the Northeast Regional Office, which rejected it on February 8, 2024, because Gadson (1) filed his appeal with the incorrect regional office; (2) did not include copies of the continuation page explaining the reason for the appeal; and (3) did not include a complete set of four carbonized copies of the appeal form.  Because the Northeast Regional Office does not retain copies of rejected appeals, the original documents were returned to Gadson along with a notice of

4

rejection and a reminder that Gadson should resubmit his third corrected appeal to the North Central Regional Office.  BOP records show that Gadson did not file any further appeals of Incident Report No. 3812218.

For his part, Gadson asserts that he submitted the proper number of carbon copies and that prison staff did not allow him to elevate his appeal to the General Counsel by filing a BP-11, which was against BOP policy.

OPINION

## I.  Exhaustion

Courts generally require a prisoner to exhaust all BOP administrative remedies before bringing a § 2241 action.  *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004); *Anderson v. Miller*, 772 F.2d 375, 376-77 (7th Cir. 1985).  Exhaustion of administrative remedies requires complete exhaustion, even if the appeals process is likely to result in the denial of the requested relief.  *See Greene v. Meese*, 875 F.2d 639, 641 (7th Cir. 1989).  Exhaustion may be excused, however, if the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," such that "no ordinary prisoner can discern or navigate it."  *Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

While Gadson concedes that his first attempted appeal was rejected because it contained more than one continuation page, and his resubmission of that appeal was rejected because he filed it with the wrong BOP regional office and without the required number of carbon copies and copies of the continuation page, he argues that BOP's "bureaucratic ping-pong" and "shifting technicalities, imposed after months of delay, made meaningful exhaustion impossible."  (Dkt. #20, at 2.)  Unfortunately for Gadson, he has neither offered evidence that requiring exhaustion would cause him prejudice, nor that he had cause to avoid the

administrative process, however bureaucratic it may be. BOP made clear what Gadson needed to do to file his appeal and gave him multiple opportunities to do so, yet Gadson still failed to exhaust his administrative remedies by filing a BP-11 form with the correct Regional Office and the correct number of copies. Because Gadson has failed to exhaust his administrative remedies in the manner required of him and has failed to make a convincing argument that those remedies were unavailable or "incapable of use" because "no ordinary prisoner can discern or navigate it," *Ross*, 578 U.S. at 643-44, his petition for habeas corpus must be dismissed.

## II. Merits

Even if Gadson's failure to exhaust administrative remedies is excused by his unsuccessful attempts to file an appeal with the Northeast Regional Director, he cannot prevail because he has also failed to demonstrate a violation of the Due Process Clause. To state a procedural due process claim, an inmate must allege facts suggesting that he was deprived of a "liberty or property interest" and that this deprivation took place without the procedural safeguards necessary to satisfy due process. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Because federal inmates have a liberty interest in their earned good-time credits, *Jackson v. Carlson*, 707 F.2d 943, 946-47 (7th Cir. 1983), they are entitled to due process before these credits can be revoked. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). More specifically, a disciplinary decision that results in the loss of good-time credits must provide the inmate with the following procedural safeguards to adhere to due process: (1) advance written notice of the charges; (2) an opportunity, taking into account the institution's safety concerns, to call witnesses and present evidence in his defense; (3) a written statement from the factfinder identifying the evidence on which they relied and the reason(s) for the decision; and (4)

findings supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Wolff*, 418 U.S. at 564.

Here, Gadson received a sanction that disallowed 27 days of good-time credit. Gadson does not dispute that he received advance notice of the disciplinary proceeding, as well as a written report of the hearing officer's decision.[5] Rather, Gadson argues that he was denied due process because he was not given an opportunity to call witnesses and present evidence on his own behalf, due to his hearing being conducted in the segregated housing unit where he did not have access to his documents. However, he fails to present any evidence that this occurred. In fact, the only undisputed evidence of record shows that Gadson was advised in writing of his rights to call witnesses and present evidence *in advance* of the hearing but waived those rights by signing forms presented to him on August 17, 2023. Moreover, Gadson fails to explain how he was prejudiced by the alleged denial of the opportunity to present evidence or call witnesses. *Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011) (absent prejudice, any alleged due process error is harmless error). For example, he does not identify what documents he would have presented as evidence or whom he would have called as a witness, explained what that evidence would have proven, or stated what difference it would have made to the outcome. *See Prucha v. Watson*, No. 19-cv-144, 2020 WL 620005, at *3 (S.D. Ind. Feb. 10, 2020) (finding no prejudice where petitioner did not explain what a witness would have said). Accordingly, the court cannot find that a due process violation occurred.

---

[5] Gadson asserts for the first time in his reply brief (dkt. #20, at 3) that the DHO's findings are not supported by "some evidence," but the court will not consider that contention because not only was Gadson not allowed to proceed on any such claim, but he has failed to develop any meaningful argument in support of it. *See Campos v. Cook Cty.*, 932 F.3d 972, 976 (7th Cir. 2019) ("Parties waive arguments which they develop for the first time in a reply brief.").

ORDER

IT IS ORDERED that:

1)  The habeas corpus petition filed by Bernard Gadson (dkt. #1) is DENIED.

2)  Gadson's motion for expedited review (dkt. #21) is MOOT.

3)  The clerk of court is directed to close this case and enter judgment accordingly.

Entered this 12th day of May, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge